## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

BRASS & BURL, INC., and
ADAM YOUNG

      Plaintiffs,

v.

SILVER EARTH, INC. and
JUSTIN REITLER VAN WART,

      Defendants.

---

## COMPLAINT

---

    The Plaintiffs, Brass & Burl, Inc. and Adam Young, by and through the undersigned counsel, and for their complaint against the defendants Silver Earth, Inc., and Justin Reitler Van Wart, state as follows:

### PARTIES AND JURISDICTION

    1.    Plaintiff Brass & Burl, Inc. ("BNB") is a New York corporation with its place of business located in the state of New York.

    2.    Plaintiff Adam Young is a resident of New York City in the state of New York.

    3.    Defendant Silver Earth, Inc. ("Silver Earth") is a Colorado corporation with its principal place of business located at 1236 Brookview Way, AKA 1236 Promontory Overlook, Crestone, Colorado, 81131.

    4.    Defendant Justin Reitler van Wart ("van Wart") is, upon information and belief, an individual residing in Saguache County, Colorado, and is the Director of Sales at Silver Earth.

    5.    This Court has subject matter jurisdiction over B&B's claims for trademark infringement and related claims pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338(a).

6.      This Court has supplemental jurisdiction over Plaintiffs' claims arising under the laws of the State of Colorado pursuant to 28 U.S.C. § 1367(a) because they are so related to B&B's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

7.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 1400(a) because (a) the wrongful conduct alleged occurred in the District of Colorado and (b) Defendants may be found in the District of Colorado.

## FACTUAL BACKGROUND

8.      Plaintiff Adam Young is an owner of BNB, a business which was incorporated in May of 2015 and specializes in the online sale of home furnishings.

9.      BNB began operations on May 5, 2015.

10.     In February of 2015, Young sought web development and administration services for an interactive website for BNB for the purpose of advertising and facilitating its sales.

11.     On or about February 10, 2015, Young contacted Silver Earth, among several other providers, to seek these services.  Silver Earth responded to Young's query on the same day.

12.     Later on February 10, 2015, Defendant van Wart represented to BNB, via email, that the following services were supported "out of the box" by Silver Earth:

    a. Nice Website;
    b. Capability to sync inventory with in-house warehouse;
    c. Easy front end management;
    d. Access to ad-hoc hours;
    e. Gift cards;
    f. Email marketing support;
    g. Package deal with considerations for price;
    h. Support for different payment options, pricing, unique products;
    i. Loyalty program to accrue redemption points; and
    j. Search Engine Optimization tools

2

13.     Defendant van Wart also represented that Silver Earth used and was well versed in "bootstrap," a programming framework which enables websites to display easily on desktop computers as well as mobile devices.

14.     Defendant van Wart also showed Young, as well as BNB co-owner Emily Young, a WebEx Demo concerning Silver Earth's services on February 13, 2015.  The WebEx demo purported to showcase Silver Earth's capabilities.  Defendant van Wart also represented that the websites www.shoptwigs.com and www.effectivepetwellness.com were developed by Silver Earth and were examples of the type of website Silver Earth had the capability to develop for BNB.  Defendant van Wart represented to Young that Silver Earth had the ability to implement the functionality associated with the website www.shoptwigs.com, which would be of similar design  As such, Silver Earth purported to be in a position to perform the web design work quickly and efficiently.

15.     The website www.shoptwigs.com was, and currently is, featured on the Silver Earth website as a "case study."  Shoptwigs is a business that sells a large number of different apparel products.  Because BNB sells a variety of different home furnishings, BNB needed a website with capabilities similar to those of www.shoptwigs.com.

16.     Silver Earth represented that it was capable of performing the necessary development for BNB within sixty days, and would be willing to do so, for a price of under $20,000.

17.     Silver Earth's representations were false at the time they were made.  As described below, Silver Earth had no intention of performing the development work as contracted for.  Instead, Silver Earth intended to perform the work slowly and at greater expense in order to "fleece" Young for more and more money.  Upon information and belief, Silver Earth

kept no real time records and repeatedly falsified the time spent by its employees on the project in order to request additional retainer payments from Young.

18.     In reliance upon Silver Earth's misrepresentations as stated above, Adam Young, on behalf of BNB, entered into a contract with Silver Earth for the development of BNB's website. A copy of that contract, entitled is attached as Exhibit 1 ("Contract").

19.     The Contract constitutes a binding contract between Silver Earth and Adam Young.

20.     For an initial payment of $15,000, the Contract required Silver Earth to provide a total of 200 hours of Web Developer and Design Services, Configuration, 1:1 training, best practices set-up for implementation from Shipping to Taxes to getting the POS operational, and an additional 4 hours of Data Migration Services.

21.     The Contract further provided that an additional retainer would be required if Silver Earth exceeded 200 hours worth of work.

22.     On March 30, 2015, Silver Earth represented to Young that the "working test site is 60% complete (meaning most things are working, but somethings [sic] need to be finished coding).

23.     Despite the above representation, Silver Earth failed to deliver the services promised under the Contract within sixty days. Instead, Silver Earth had numerous problems performing even basic web development tasks competently or in a timely manner.

24.     Throughout the course of the Contract, Silver Earth routinely failed to keep appointments or follow through on deadlines for milestones in performing the web development services.

25.     Notwithstanding the above, on June 22, 2015, van Wart represented to Young that Silver Earth had exhausted the initial retainer (covering the initial 200 hours worth of work), and requested payment of $6,500 for another 100 hours worth of work to complete the web development services required by the Contract.  Silver Earth provided no specific accounting as to how it had allegedly spent its time.

26.     Mr. Young made the requested payment.

27.     Despite continuing payments by Young, Silver Earth continued to make little or no progress on development of BNB's website.  Young was unable to monitor BNB's progress due to Silver Earth's representations that it would upload multiple updates as "batch" changes. As a result of this practice, the website would appear to have undergone no changes whatsoever for weeks at a time.

28.     On August 11, 2015, Young requested a day-by-day recap of how Silver Earth was spending its time, ostensibly on BNB's website.

29.     In response, and by email on August 11, 2015, van Wart attempted to justify Silver Earth's delays by claiming that web design was not its "core competency," stating the following to Young:

> A little background on silver earth: we are a company providing a backend platform. That is our core competency. Frond end [sic] design is not our core (as you are seeing). One suggestion is to find an outside 3rd party bootstrap web developer and give them full access to your site. You would manage that relationship directly, and pay them directly.

30.     Silver Earth never provided a day-by-day recap as to how it was supposedly spending its time on the project, as Mr. Young requested.

31.     The Contract contains licensing and other provisions which would prevent BNB from using critical software and coding associated with the website without Silver Earth's approval.

32.     Having already spent substantial funds and seeing little choice but to continue to work with Silver Earth, Young continued to try to work with Silver Earth and its employees to develop BNB's website.

33.     Despite Mr. Young's continued efforts, Silver Earth continued to miss deadlines and fail to meet its obligations under the Contract.

34.     On September 29, 2015, Silver Earth requested yet another payment of $6,500 for an additional 100 hours worth of work, claiming the retainer paid in June of 2015 had been exhausted.  As with its prior retainer request, Silver Earth provided no specific accounting as to how it had allegedly spent its time.

35.     Once again, Young made the requested payment.

36.     On October 23, 2015, Emily Young requested a breakdown of how Silver Earth spent its time ostensibly working on BNB's website.  Defendant van Wart responded that "billable hours since the replenishment have been about 80.  So 20 left.  Carolyn will provide details."

37.     On October 24, 2015, Defendant van Wart responded that "Team hours for Bass & Burl in October thru 10/23 $45/hr" were as follows: Michael: 30 hours – Filters, Wish List, back end changes to core system; Carolyn: 45 hours – Site Styling, Site cutover, Front end Management & Customer Contract; Other contractors: 5 hours.  Silver Earth provided no other information or any details as to how the time on the project was spent.

38.     By this point in time, Young had paid Silver Earth $28,000.

39.     $2,000 of the $28,000 sum Young paid to Silver Earth was intended to be a "bonus" to Silver Earth's employees in order to incentive them for completing the work on time. Silver Earth accepted this payment and confirmed its receipt of the payment in writing, only to allege later that it never received the bonus payment.

40.     Upon information and belief, the check that included the sums constituting the bonus payment was deposited by Silver Earth, but the $2,000 "bonus" funds were never paid to Silver Earth's employees.

41.     Silver Earth contracted to finish this job within 60 days of execution.  In the end, Silver Earth spent over six months and charged Young over $28,000, yet failed to perform the services promised in the Contract.

42.     A list of action items still outstanding, which Silver Earth ultimately failed to perform, is attached as Exhibit 2.

43.     Silver Earth failed to perform the services required by the Contract in a timely or workmanlike manner.

44.     Upon information and belief, Silver Earth was never properly equipped to perform web development, and created an essentially unusable product, in part, by relying on outdated and unserviceable coding.

45.     Upon information and belief, Silver Earth misrepresented the number of hours it spent on the project in order to induce Young to make additional retainer payments that were not, in fact, owed.  Despite at least five separate requests by Young, Silver Earth never provided a detailed breakdown of how it had supposedly spent its time on the project.

46.     As a result of Silver Earth's failure to perform the contract, Young contracted with a different web developer to build the Brass and Burl website.  The developer built the entire website from scratch in less than four weeks for a total of $24,000.00.

47.     Young terminated the Contract on or about October 24, 2015 as a result of Silver Earth's conduct described herein.

48.     Despite termination of the Contract, Defendants have continued to maintain the following website, http://brassandburl.mysecommerce.com/, which is a non-functional version of the website which Silver Earth was contracted to develop.

49.     This website prominently features Brass and Burl's logo and trademark, BRASS & BURL at the top of the page.  The logo and trademark appear as follows:



50.     BNB began using the BRASS & BURL mark in commerce on or about May 5, 2015.

51.     On or about October 24, 2015, Silver Earth began using the BRASS & BURL mark without authorization due to the termination of the Contract as described above.

52.     BNB has expressly requested that Silver Earth remove the infringing website and cease and desist unauthorized use of the BRASS & BURL Mark.

53.     At all times material to BNB's requests, Defendant Justin Van Wart has exercised control over Silver Earth's decision not to take down the infringing website, and directed that the infringing website remain active.

54.     Despite several requests, Silver Earth and Van Wart have ignored BNB's demands, responding instead with a demand for payment of additional money which they contend is due pursuant to the Contract.

55.     The ongoing presence of the unauthorized Silver Earth site is has caused and is causing severe damage and irreparable harm to BNB, including but not limited to a) driving web traffic to the non-functional version of the BNB site posted by Silver Earth and causing consumer confusion; and b) preventing the search engine optimization of the legitimate BNB site, reducing potential web traffic and preventing sales.

56.     Silver Earth's ongoing use of BRASS & BURL is willful and intentional, and in callous disregard of BNB's trademark rights.

### Count I
### Trademark Infringement – 15 U.S.C. § 1114
### (Against Silver Earth and van Wart)

57.     BNB hereby realleges and incorporates the above paragraphs as if fully stated herein.

58.     Defendants' activities constitute infringement of BNB's trademark in violation of the Lanham Act, including but not limited to 15 U.S.C. § 1114(1).

59.     BNB markets, sells, and distributes its home furnishings under the BRASS & BURL Mark and uses that mark to distinguish its products from those of its competitors.

60.     Because of BNB's continuous and exclusive use of the BRASS & BURL Mark, it has come to mean, and is understood by consumers and the public to signify the home furnishings that originate from BNB.

61.     Defendants' activities with respect to the infringing Silver Earth site have caused and are continuing to cause confusion, mistake, and deception as to a) whether BNB has a

functional website; b) whether BNB is currently in business; and c) whether BNB is currently selling particular products.

62.     Upon information and belief, Defendants are conducting their activities with respect to the infringing Silver Earth site with the express purpose of causing damage to BNB as described above.

63.     BNB is entitled to recover damages from Defendants as a result of Defendants' trademark infringement described herein under 15 U.S.C. § 1117(a) in an amount to be proven at trial.  Alternatively, BNB is entitled to an award of statutory damages under 15 U.S.C. § 1117(c).

64.     BNB is also entitled to an award of treble damages against Defendants pursuant to 15 U.S.C. § 1117(b) in an amount to be proven at trial.  Alternatively, BNB is entitled to an award of statutory damages under 15 U.S.C. §1117(c).

65.     BNB is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a), enjoining Defendants from any further use of the BRASS & BURL mark.

66.     BNB is also entitled to recover its attorneys' fees and costs of suit.  15 U.S.C. § 1117.

**Count II**
**False Designation of Origin – 15 U.S.C. § 1125**
**(Against Silver Earth and Van Wart)**

67.     BNB hereby realleges and incorporates the above paragraphs as if fully stated herein.

68.     BNB's wrongful conduct includes unauthorized use of the BRASS & BURL Mark as described herein.

69.     BNB's unauthorized use of the BRASS & BURL Mark misrepresents the nature, characteristics, and origin of BNB's goods and services, causes deception, and constitutes

intentional and knowing unfair competition and false designation of origin and false or misleading descriptions or representations, all in violation of the Lanham Act's Section 43(a), 15 U.S.C. § 1125(a).

70.     Defendants' acts described herein have been willful and deliberate.

71.     Defendants' wrongful conduct is likely to continue unless restrained and enjoined.

72.     Defendants' acts described herein have injured and continue to irreparably injure BNB.

73.     As a result of Defendants' acts, BNB has been injured in an amount to be proven at trial.

**Count III**
**Fraudulent Inducement**
**(Against Silver Earth and van Wart)**

74.     Young and BNB hereby reallege and incorporate the paragraphs 1 through 47 as if fully stated herein.

75.     Silver Earth and van Wart deliberately and intentionally made false representations that it intended to perform the web development work according to the specifications and timeframe described in the Contract, as stated above.

76.     Silver Earth and van Warts misrepresentations were willful and made with reckless indifference to Young's rights.

77.     Young reasonably relied on the representations from Silver Earth and van Wart described above to his detriment by agreeing to enter into the Contract.  Young reasonably believed that Silver Earth intended to perform the Contract as specified.

78.     As a result of Young's reliance on Silver Earth's false representations, Young has been damaged in the amount of at least $28,000, including but not limited to the amounts paid to Silver Earth.

79.     As a result of Young and BNB's reliance on Silver Earth's false representations, Young and BNB have lost profits resulting from the delay in the construction of the Brass and Burl website.

### Count II – Breach of Contract
### (Against Silver Earth)

80.     Young hereby realleges and incorporates paragraphs 1 through 47 and 74 through 79 as if fully stated herein.

81.     Silver Earth and Young entered into a binding contract as alleged above.

82.     Silver Earth breached its obligations under the Contract, including the implied covenant of good faith and fair dealing by, among other things:

a.      Failing to construct the BNB website in a timely or workmanlike manner as alleged herein; and

b.      Misrepresenting how Silver Earth was spending its time performing work on the contract, and procuring additional retainer payments from Young by and through those misrepresentations.

83.     Silver Earth's conduct as alleged herein constitutes a material breach of the Contract.

84.     Silver Earth also owed a duty under the implied covenant of good faith and fair dealing to truthfully report the hours it claimed to have spent working on the Contract in connection with its requests for additional retainer payments.

85.     Silver Earth breached the implied covenant of good faith and fair dealing by failing to truthfully report to Young the hours it claimed to have spent working on the Contract.

86.     Silver Earth's conduct with respect to its demands for additional retainer payments also constituted a material breach of the implied covenant of good faith and fair dealing present in the Contract.

87.     As a result of Silver Earth's breaches of the Contract and implied covenant of good faith and fair dealing as alleged above, Young has suffered damages in an amount to be determined at trial.

WHEREFORE: Plaintiffs Adam Young and Brass and Burl, Inc. respectfully request that this Court grant the following relief:

1.     A finding that Defendants have willfully infringed BNB's rights under the BRASS & BURL Mark;

2.     A finding that Defendants have committed and are committing acts of false designation, false or misleading description of fact, and false or misleading representation against BNB, in violation of 15 U.S.C. § 1525(a);

3.     An award of actual, treble, or in the alternative, statutory damages pursuant to 15 U.S.C. § 1117(a) in an amount to be proven at trial;

4.     Injunctive relief pursuant to 15 U.S.C. § 1116(a);

5.     Compensatory damages for fraudulent inducement in an amount to be proven at trial;

6.     Punitive damages for fraudulent inducement in an amount to be proven at trial;

7.     Consequential damages for fraudulent inducement, including but not limited to lost profits, in an amount to be proven at trial;

8.      An award of costs and attorney's fees pursuant to 15 U.S.C. § 1117, and as

otherwise permitted by law;

9.      Such other relief that this Court deems to be just and proper.


Respectfully submitted,

s/ *Thomas P. Howard*_____
THOMAS P. HOWARD, LLC
Thomas P. Howard, #31684
William C. Groh, III, #43577
842 W. South Boulder Rd., #200
Louisville, Colorado  80027
Tel:   (303) 665-9845
Fax:  (303) 665-9845
ATTORNEY FOR PLAINTIFFS